UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:                                                              Case No. 19-41157-ess

FELIKS DVORKIN,                                                     Chapter 7

                        Debtor.
-----------------------------------------------------------x

INNA TATARINOVA DELLA LUNA,

                        Plaintiff,                     Adv. Pro. No. 19-01065-ess

       -against-

FELIKS DVORKIN,

                        Defendant.
-----------------------------------------------------------x

## MEMORANDUM DECISION AFTER TRIAL

*Appearances*:

Inna Tatarinova Della Luna                          Feliks Dvorkin
  *Plaintiff, pro se*                                    *Defendant, pro se*

February 26, 2020

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Inna Tatarinova Della Luna commenced this adversary proceeding on May 16, 2019 by filing a complaint against Chapter 7 debtor, Feliks Dvorkin.  Ms. Della Luna seeks a determination that a judgment debt that she obtained in a New York small claims court action should not be discharged in Mr. Dvorkin's bankruptcy case under Bankruptcy Code Section 523(a)(2) because it arose from Mr. Dvorkin's knowingly false statement or fraud.  Ms. Della Luna's claim turns on whether Mr. Dvorkin knowingly made a false representation with the intent to deceive Ms. Della Luna at the time the false representation was made.

The trial of this action took place on January 23, 2020, and the Court heard testimony from Ms. Della Luna and Mr. Dvorkin, who have each represented themselves throughout these proceedings, and received several exhibits in evidence, and the record is now closed.

## Jurisdiction

Ms. Della Luna's nondischargeability claim arises under Bankruptcy Code Section 523(a)(2) and is a core matter.  28 U.S.C. § 157(b)(2)(I).  And as a core matter, this Court has constitutional authority to enter a final judgment, because Ms. Della Luna's claims stem "from the bankruptcy itself."  *Stern v. Marshall*, 564 U.S. 462, 499 (2011).  For these reasons, this Court has jurisdiction to consider and enter judgment on these claims under 28 U.S.C. § 1334(b) and the Standing Order of Reference dated August 28, 1986, as amended by Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Bankruptcy Rule 7052.

**Selected Procedural History**

*The Small Claims Court Action*

On December 3, 2015, long before this bankruptcy case was commenced, Ms. Della Luna brought an action against Mr. Dvorkin in the Civil Court of the City of New York, Small Claims Division (the "Small Claims Court"), Index Number S.C. 3167 2015-41 (the "Small Claims Court Action"). In that action, Ms. Della Luna sued Mr. Dvorkin to collect the balance of a $5,000 loan that she made to him on April 9, 2013. She sought repayment of the loan with interest.

On March 10, 2016, a Notice of Judgment was entered in the Small Claims Court Action in favor of Ms. Della Luna and awarding her a judgment of $6,332.50 against Mr. Dvorkin (the "Judgment"). The state court calculated the Judgment by adding together the judgment debt of $5,000, the interest on the judgment debt from April 9, 2013 in the amount of $1,312.50, and a disbursement fee of $20.

Upon obtaining the Judgment, Ms. Della Luna, through counsel, sent information subpoenas to Mr. Dvorkin's bank, TD Bank, N.A., and Mr. Dvorkin's employer, Pro Imaging Services Inc., also known as Comprehensive Medical, to obtain information to collect the Judgment. On April 18, 2018, Ms. Della Luna attempted to add Jayfel Inc., a corporation formed and owned by Mr. Dvorkin in connection with his work at Comprehensive Medical, as a post-judgment defendant in the Small Claims Court Action.

On April 20, 2018, Mr. Dvorkin sought to vacate the Judgment in the Small Claims Court on grounds that he did not receive notice of the Small Claims Court Action, and that court issued an order to show cause why the Judgment should not be vacated and restored the matter to the calendar.

On June 5, 2018, after further proceedings and a trial in the Small Claims Court Action, the court entered a corrected notice of judgment, finding in favor of Ms. Della Luna and awarding her $6,092.38 (the "Corrected Judgment").  The court calculated the Corrected Judgment by adding together the reduced judgment debt of $4,250, interest on the judgment debt from September 1, 2013 in the amount of $1,822.38, and a disbursement fee of $20.

*Mr. Dvorkin's Bankruptcy Case*

On February 27, 2019, Mr. Dvorkin filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 19-41157.  On April 16, 2019, the Chapter 7 Trustee, Lori Lapin Jones, filed a report of no distribution.  And on June 6, 2019, Mr. Dvorkin received a discharge.

*This Adversary Proceeding*

On May 16, 2019, Ms. Della Luna commenced this adversary proceeding by filing a complaint asserting a nondischargeability claim under Bankruptcy Code Section 523(a)(2)(A), Adv. Pro. Case No. 19-01065 (the "Complaint").  Ms. Della Luna alleges that the Corrected Judgment in the Small Claims Court Action in the amount of $6,092.38 remains unsatisfied and should not be discharged in his bankruptcy case.

On June 27, 2019, Mr. Dvorkin filed an answer to the Complaint.  From time to time, and on September 6, 2019, the Court held pre-trial conferences in this action, at which Ms. Della Luna and Mr. Dvorkin, each representing themselves, appeared and were heard.  And on September 17, 2019, the Court issued a scheduling and pre-trial order setting a pre-trial conference and directing the parties to file individual pre-trial statements identifying the disputed and undisputed issues, facts, and law for trial and listing their anticipated trial witnesses and exhibits.

On October 11, 2019, Mr. Dvorkin filed his pre-trial statement and trial exhibits.  And on October 15, 2019, Ms. Della Luna filed her pre-trial statement and trial exhibits.

On October 23, 2019, the Court held a final pre-trial conference, at which Ms. Della Luna and Mr. Dvorkin appeared and were heard.  And on October 28, 2019, the Court entered an order scheduling a trial for January 23, 2020.

### *The Loan at Issue*

It is undisputed**,** and the record shows, that on April 9, 2013, Mr. Dvorkin borrowed $5,000 from Ms. Della Luna.  January 23 Trial Tr. 5:21-22, 6:5-6, 45:21; Pl. Exh. 1.  The parties also agree, and the record establishes, that Mr. Dvorkin agreed to repay the loan any time that Ms. Della Luna requested after June 15, 2013.  Pl. Exh. 1; January 23 Trial Tr. 6:8-10.  Further, the parties agree, and again the record shows, that Mr. Dvorkin made at least three payments of $250 to Ms. Della Luna beginning in May 2013.  January 23 Trial Tr. 6:10-11, 28:12-13; Def. Exh. A.

### **The Trial**

On January 23, 2020, the Court held a trial on the complaint.  At trial, Ms. Della Luna offered her own testimony, and offered into evidence Plaintiff's Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11.  Mr. Dvorkin offered his own testimony and offered into evidence Defendant's Exhibits A and B.  The Court received all of these exhibits into evidence.  And at the close of trial, the Court also received into evidence Ms. Della Luna's pre-trial statement and exhibits, ECF No. 25, as Plaintiff's Exhibit 12, and Mr. Dvorkin's pre-trial statement and exhibits, ECF No. 24, as Defendant's Exhibit C.  January 23 Trial Tr. 57:11-25; Pl. Exh. 12; Def. Exh. C.

## The Witnesses

### The Testimony of Ms. Della Luna

Ms. Della Luna represented herself at trial.  She testified about her contacts with Mr. Dvorkin, the context and terms of the loan, and her efforts to collect it, among other subjects.  Portions of her testimony are summarized below.

Ms. Della Luna testified that on April 8, 2013, Mr. Dvorkin asked her for a loan of $5,000.  January 23 Trial Tr. 5:21-22.  She also testified that Mr. Dvorkin told her that he needed to borrow $5,000 in order to invest in his relative's business, and that he had only $35,000 of the necessary $40,000 to make the investment.  January 23 Trial Tr. 5:24-6:5.  Ms. Della Luna testified that she agreed to lend him the money because he promised to pay five percent monthly interest on the $5,000 loan.  January 23 Trial Tr. 6:5-7.  And Ms. Della Luna testified that Mr. Dvorkin promised to repay the loan anytime that she asked after June 15, 2013.  January 23 Trial Tr. 6:8-10.

Ms. Della Luna testified that she received three checks from Mr. Dvorkin, each for $250.  January 23 Trial Tr. 6:10-11.  She testified that each time she received a check from Mr. Dvorkin, he stated that it was payment on the monthly interest.  January 23 Trial Tr. 6:11-14.  She stated, "[a]nd I receive three check from Mr. Dvorkin, each $250.  And every time when I received the check, I asked this – you repay me money or that's the interest – and he assured me that's the interest."  January 23 Trial Tr. 6:11-13.  She testified that on February 24, 2014, Mr. Dvorkin wrote her a check for $1,500 but asked her not to deposit it until he told her to.  January 23 Trial Tr. 9:12-14, 10:22-23.  She explained:

> When we communicate through [text] messages and he stated, do not deposit check.  . . . My account is still closed.  [The] bank say it is IRS.  I [could] not connect[] [with] the IRS today, but . . . left a message.  So tomorrow, I'll let you

> know what is going on. . . . The check for 1,500 still not deposited because he
> asked me not [to] deposit, [because of] his long battle with IRS.

January 23 Trial Tr. 9:17-23, 10:25-11:1.  And she stated that she still had possession of the

$1,500 check but did not have access to it, because she had stored it away.  January 23 Trial Tr.

10:22-23.

Ms. Della Luna testified that in March 2014, after receiving a college tuition statement

for her son, she asked Mr. Dvorkin to repay at least $3,000 of the loan, in order to help her to pay

the balance of that statement.  January 23 Trial Tr. 11:12-18.  She testified that she was forced to

borrow $3,000 at five percent interest and that Mr. Dvorkin promised to repay the interest on that

loan, because he was unable to repay her at that time.  January 23 Trial Tr. 11:16-24.

Ms. Della Luna testified that she decided to bring the Small Claims Court Action to

recover the balance of the loan before the statute of limitation passed.  January 23 Trial Tr.

17:24-25.  She testified that she obtained a default judgment against Mr. Dvorkin on March 10,

2016, and that Judgment was received in evidence as Plaintiff's Exhibit 4.  January 23 Trial Tr.

18:11, 21:7; Pl. Exh. 4.

Ms. Della Luna testified that in order to collect the Judgment, she sent an information

subpoena to TD Bank, and received a response that Mr. Dvorkin did not have an account there.

January 23 Trial Tr. 21:8-13.  She testified that she hired an attorney to send an information

subpoena to Mr. Dvorkin's employer, Pro Imaging Services Inc., and the cover letter written by

Jan Ira Gellis, P.C. and notarized response to the information subpoena were received in

evidence as Plaintiff's Exhibit 5.  January 23 Trial Tr. 21:14-17; Pl. Exh. 5.  Ms. Della Luna

testified that in the notarized response to the information subpoena, Pro Imaging Services Inc.

stated that the organization is named Comprehensive Medical, and that Mr. Dvorkin worked for

the organization through the Jayfel Inc. entity.  Pl. Exh. 5.  January 23 Trial Tr. 22:13-16, 23:19-24.

Ms. Della Luna testified that she attempted to add Jayfel Inc. to the Judgment after it was entered, and the Small Claims Court's order to show cause why the court should not add a defendant post-judgment and Ms. Della Luna's accompanying affidavit were received in evidence as Plaintiff's Exhibit 6.  January 23 Trial Tr. 24:13-23, 25:4-7; Pl. Exh. 6.  She testified that on April 20, 2018, Mr. Dvorkin moved to vacate the Judgment, and the Small Claims Court's order to show cause why the default judgment should not be vacated and his accompanying affidavit were received in evidence as Plaintiff's Exhibit 7.  January 23 Trial Tr. 25:10-22; Pl. Exh. 7.

Ms. Della Luna testified that, after a hearing on the order to show cause why the default judgment should not be vacated, the Small Claims Court held a trial and entered the Corrected Judgment.  January 23 Trial Tr. 26:3-15.  The Corrected Judgment was received in evidence as Plaintiff's Exhibit 8.  January 23 Trial Tr. 26:9-14, 28:10; Pl. Exh. 8.  And she testified that the judgment amount was reduced by $750 from $5,000 to $4,250 because "three time I received a check from Mr. Dvorkin . . . $250 each."  January 23 Trial Tr. 28:11-13, 28:20.

Ms. Della Luna testified that Mr. Dvorkin promised to begin to pay the Corrected Judgment in October 2018, and to pay it in full by December 2018.  January 23 Trial Tr. 34:14-17.  She offered in evidence several text message exchanges between herself and Mr. Dvorkin discussing payment of the judgment debt, and these were received in evidence as Plaintiff's Exhibit 9 and 10.  January 23 Tr. 32:12-33:10, 36:2-10; Pl. Exhs. 9, 10.  They state, in part, as follows:

> July 27, 2018, 11:40 A.M.
> (Mr. Dvorkin): Hey!  Call me please after 8 pm, to talk about my payment to You.

Thu, Sept. 20, [2018], 11:52 A.M.
(Ms. Della Luna): Hi Feliks.  On July 27 we spoke on the phone and you said that you would like to make a payment in October.  When you will make a payment to me?

(Mr. Dvorkin): In October.  I will tell You the day later.

(Ms. Della Luna): I hope it will be beginning of the month and keep in mind, that on corrected amount from court, each day you have to add extra 9% it is about $1.70 and it will go up.  (9% that is [standard] small court order, not my call)

(Mr. Dvorkin): 9% a Day?!  Good for you!

(Ms. Della Luna): Year
(Ms. Della Luna):  Multiple amount on 9%
(Ms. Della Luna): Do simple math .% will go up till you pay
. . .

Mon, Oct. 29, [2018], 11:25 AM
(Ms. Della Luna): Hi Feliks.  Today is October 29.  You said you will start paying in October.  When?  Thank you

Fri, Apr 5, [2019], 11:11 PM
(Mr. Dvorkin): Sorry, I really can't help you, I don't have $$ at all.  Sorry.

Pl. Exhs. 9, 10.

Based on the entire record, this Court finds that Ms. Della Luna was a credible witness, and that her testimony was consistent with, and supported by, several of the exhibits admitted into evidence.

*The Testimony of Mr. Dvorkin*

Like Ms. Della Luna, Mr. Dvorkin represented himself at trial.  He testified about his contacts with Ms. Della Luna, the circumstances surrounding the loan, and his efforts to repay it, among other subjects.

Mr. Dvorkin testified that in 2013, he borrowed $5,000 from Ms. Della Luna.  January 23 Trial Tr. 45:21.  He testified that in May 2013, he began making monthly payments to Ms. Della

Luna in the amount of $250, and copies of checks bearing numbers 545, 552, and 555, were received in evidence as Defendant's Exhibit A.  January 23 Trial Tr. 45:21-23, 48:19-22; Def. Exh. A.  Mr. Dvorkin also testified that he made the June 2013 payment of $250 to Ms. Della Luna in cash, so that the memo lines on the July 2013 and August 2013 checks indicate that they were the third and fourth payments.  January 23 Trial Tr. 45:23-25; Def. Exh. A.  In total, Mr. Dvorkin testified that he repaid $1,000 of the loan amount to Ms. Della Luna.  January 23 Trial Tr. 45:25-46:1.

Mr. Dvorkin testified that he was unable to repay the balance of the loan when Ms. Della Luna requested full repayment in March 2014, because he was gambling and "lost this money at that time."  January 23 Trial Tr. 46:9-12, 11:12-18.  Mr. Dvorkin stated, "[a]ctually, I couldn't do it because . . . I bet all my life with casino.  . . . I did so many awful things with casino, and I lost this money at that time.  I couldn't give her $4,000 immediately."  January 23 Trial Tr. 46:9-12.  He testified that he offered to repay her in smaller increments, if she first provided a receipt for the payments that she already received from him.  January 23 Trial Tr. 46:12-15.

Mr. Dvorkin also testified that Ms. Della Luna responded angrily to his request for a receipt, and after that, "we broke all communications."  January 23 Trial Tr. 46:16-17.  He stated: "But we did not communicate at all and in 2018, I got subpoena from her after four or five years."  January 23 Trial Tr. 46:20-22.  And he testified that it was not until 2018 that he began communicating with Ms. Della Luna again, after she brought her claim in the Small Claims Court Action.  January 23 Trial Tr. 46:20-22.

Mr. Dvorkin testified that in December 2017, he lost his job and had difficulty finding work.  January 23 Trial Tr. 47:2-7.  He stated:

> So, and at this time at the end of . . . December 2017, my company I used to work was closed as two big companies also.  So, about 200 technicians, sonographer[s]

lost [their] job[s]. And I don't have money at all.  Sometimes, we had part-time, two, three times a month to work, two, three times a day – or a month.  So, I was in awful situation.  That's why in April 2019, I applied for early retirement, because I didn't have money at all.

January 23 Trial Tr. 47:2-9.

 With respect to his current financial situation, he testified that he receives only $852 a month from his pension.  January 23 Trial Tr. 47:13-14, 50:22.  And he stated that he understands that Ms. Della Luna wants to be repaid in full, but does not know how he would be able to repay her.  January 23 Trial Tr. 47:21-22.  Mr. Dvorkin testified that he filed for bankruptcy because "I don't have any assets."  January 23 Trial Tr. 47:25-48:2.

Mr. Dvorkin stated:

I pay for my son child support and my ex-wife who lives with my son, she is disabled, and sometimes, my sister help me to pay child support, because I can't pay it myself, so I am in a disastrous situation.  I understand that [Ms. Della Luna] wants money from me, but I – I will not go to crime in order to give her some money.

January 23 Trial Tr. 48:4-9.

Mr. Dvorkin testified that his current financial position and his inability to pay his current monthly expenses is shown by late rent notices from his landlord, which were received in evidence as Defendant's Exhibit B.  January 23 Trial Tr. 50:13-14; Def. Exh. B.

Finally, in response to questions from the Court, Mr. Dvorkin stated that he intended to repay Ms. Della Luna when he borrowed money from her**.**  He testified:

Q:    When you borrowed the money years ago, did you – when you borrowed it, was it your intention to try your best to pay it back?

A:    Of course.  I was sure I'd pay her back.

Q:    And what happened?

A:      Nothing.  I start to pay 250 a month as we had agreement month by month.  Then happened with her son, big trouble, and she ask me all sum right now.  I didn't have this money.  That's why I could not give her full amount of money and tried to pay part and part.  So, then we lost communication.  That's it.

January 23 Trial Tr. 58:22-59:8

Based on the entire record, this Court finds that Mr. Dvorkin was a credible witness, and that his testimony was consistent with, and supported by, several of the exhibits admitted into evidence.

### Discussion

It has long been recognized that a fundamental purpose of the Bankruptcy Code is to provide a "'fresh start'" to the "'honest but unfortunate debtor.'"  *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991)).  Consistent with this, as the Supreme Court has observed, exceptions to discharge "'should be confined to those plainly expressed.'"  *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 275 (2013) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)).  And as this Court has noted in the context of a dischargeability action, "[t]his penalty is not lightly to be invoked, as it is widely recognized that exceptions to discharge are narrowly construed."  *Chao v. Duncan* (*In re Duncan*), 331 B.R. 70, 87 (Bankr. E.D.N.Y. 2005).

*The Elements of a Claim Under Bankruptcy Code Section 523(a)(2)(A)*

In Bankruptcy Code Section 523, Congress has identified certain circumstances where considerations of public policy, fairness, and equity may lead to a denial of the dischargeability of a particular debt.  Perhaps the most commonly invoked circumstance is described in Section 523(a)(2)(A), which provides that "[a] discharge under section 727 . . . does not discharge an

individual debtor from any debt for money . . . to the extent obtained by false pretenses, a false representation, or actual fraud."  11 U.S.C. § 523(a)(2)(A).

The party challenging the dischargeability of a debt bears the burden of showing that it comes within one of Section 523's exceptions to discharge, and that burden must be carried "by the preponderance of the evidence."  *Ball v. A.O. Smith Corp*., 451 F.3d 66, 69 (2d Cir. 2006).

As this Court and others have found**,** in order to prove a nondischargeability claim under Bankruptcy Code Section 523(a)(2)(A), a plaintiff must show:

> first, that the debtor made a false representation;

> second, that the debtor knew the representation was false at the time it was made;

> third, that the debtor made the false representation with the intent to deceive the creditor;

> fourth, that the creditor justifiably relied on the representation; and

> finally, that the creditor sustained a loss that was proximately caused by the false representation.

*First Am. Title Ins. Co. v. Moses (In re Moses)*, 547 B.R. 21, 35 (Bankr. E.D.N.Y. 2016) (citing *Fleet Credit Card Servs. L.P. v. Macias* (*In re Macias*), 324 B.R. 181, 187 (Bankr. E.D.N.Y. 2004)).  *See, e.g., In re Chadha*, 598 B.R. 710, 718 (Bankr. E.D.N.Y. 2019) (citing *In re Moses*, 547 B.R. at 35); *Charell v. Gonzalez* (*In re Gonzalez*), 241 B.R. 67, 71-72 (S.D.N.Y. 1999) (setting forth the elements of a Section 534(a)(2)(A) claim).  The Court considers each of these elements in turn.

## *Whether Mr. Dvorkin Made a False Representation*

The first element that Ms. Della Luna must establish is whether Mr. Dvorkin made a false representation.  Here, it is undisputed by the parties, and the record shows, that Mr. Dvorkin

made a false representation when he stated to Ms. Della Luna that, in substance, he would repay the loan.

Accordingly, the Court finds that Ms. Della Luna has established the first element of her nondischargeability claim under Section 523(a)(2)(A), that Mr. Dvorkin made a false representation.

### Whether Mr. Dvorkin Knew the Representation Was False at the Time It Was Made

The second element that Ms. Della Luna must establish is whether, at the time Mr. Dvorkin made the representation at issue, he knew that it was false. Simply put, Ms. Della Luna has to show that Mr. Dvorkin knew that he did not intend to repay the loan to her at the time that he promised to repay it. "This element turns on the debtor's 'actual state of mind . . . at the time' the misrepresentation was made." *In re Moses*, 547 B.R. at 36 (quoting *MBNA America v. Parkhurst* (*In re Parkhurst*), 202 B.R. 816, 822 (Bankr. N.D.N.Y. 1996)).

The question of a debtor's state of mind is, of course, at the heart of a Section 523(a)(2)(A) dischargeability claim and calls for a case-specific and fact-specific inquiry. As this Court has found:

> This element turns on the debtor's "actual state of mind . . . at the time" the misrepresentation was made. And this element is satisfied if the maker of the representation knew or believed that the matter was not as represented, did not have confidence in the accuracy of his or her representations, or knew that he or she did not have a basis to make the representations.

*In re Moses*, 547 B.R. at 36 (quoting *In re Parkhurst*, 202 B.R. at 822). For example, the plaintiff may show that the debtor "knew or believed that the matter was not as [he or she] represented." *In re Moses*, 547 B.R. at 36 (citations omitted). The plaintiff may also demonstrate that the debtor "did not have confidence in the accuracy of his or her

representations." *Id.* Or the plaintiff may show that the debtor "knew that he or she did not have a basis to make the representations." *Id.*

In addition, a debtor's state of mind, like his or her dishonest or fraudulent intent, is rarely established by direct evidence. Instead, courts may consider indirect and circumstantial evidence in order to determine whether the plaintiff has shown that the debtor had the necessary knowledge at the time that the false representation was made. This may include evidence of statements and actions before the loan was entered into, at the time of the loan, and even after the loan was made.

Here, the record shows that Mr. Dvorkin was employed at the time he borrowed money from Ms. Della Luna. Pl. Exh. 12. The record also shows that approximately one month after taking the loan, Mr. Dvorkin began making payments on the loan to Ms. Della Luna. Def. Exh. A. These payments began in May 2013 and continued on a monthly basis in July and August 2013, and possibly June 2013 as well. Def. Exh. A. While Ms. Della Luna and Mr. Dvorkin dispute whether these payments were to be applied to the loan balance or to interest, it is clear from the record that within months and even weeks of borrowing money from Ms. Della Luna, Mr. Dvorkin took steps to repay the loan. *Id.*

In addition, the record shows that in March 2014, Ms. Della Luna requested that Mr. Dvorkin repay the balance of the loan in order to help her to meet urgent family expenses, including the college tuition of her son. January 23 Trial Tr. 11:12-17. As she testified:

> After this traumatic brain injury with my son [in August 2013], I asked Mr. Dvorkin to pay me loan, because it's financially become difficult and he told me that he's going to vacation.
>
> . . .

> In the beginning of March of 2014, I received a letter from my son college. His – he was not in college. He wasn't working. But the bill I received from the college that balance for the tuition, $3,000, and I have to pay or its going to [be] sent to collection.

January 23 Trial Tr. 7:4-6, 11:12-18. But the record also shows that Mr. Dvorkin was unable to do so because of his own financial hardship, arising at least in part from gambling. January 23 Trial Tr. 46:9-12. That is, the record shows that Mr. Dvorkin's financial distress, not any knowing misstatement, led to his inability to repay the loan to Ms. Della Luna.

Finally, Mr. Dvorkin testified convincingly and credibly that he intended to repay Ms. Della Luna at the time that they entered into the loan. For example, he testified that when he borrowed money from her, "I was sure I'd pay her back." January 23 Trial Tr. 58:25-59:1. And in describing his later financial distress, "I am in disastrous situation. I understand that she wants money from me, but I – I will not go to crime in order to give her some money." January 23 Trial Tr. 48:7-9.

That is, the record does not support, either directly or by reasonable inference, the conclusion that Mr. Dvorkin knew, when he promised to repay Ms. Della Luna, that his promise was knowingly false when made.

Accordingly, the Court finds that Ms. Della Luna has not established the second element of her nondischargeability claim under Section 523(a)(2)(A), that Mr. Dvorkin knew that his representation that he would repay the loan was false at the time that it was made.

### *Whether Mr. Dvorkin Made the False Representation with the Intent To Deceive*

The third element that Ms. Della Luna must establish is whether, at the time that Mr. Dvorkin made the false representation, he did so with the intent to deceive. This is,

Ms. Della Luna must show that Mr. Dvorkin intended to deceive her when he told her that he would repay the loan.

This element requires Ms. Della Luna to show that Mr. Dvorkin's conduct was "'marked by moral turpitude' or that the misconduct was an 'intentional wrong.'" *In re Moses*, 547 B.R. at 37 (quoting *New York v. Suarez* (*In re Suarez*), 367 B.R. 332, 349-50 (Bankr. E.D.N.Y. 2007)).

Here again, this Court and others have recognized that a debtor's intent may be inferred from the totality of the circumstances, because direct proof of a debtor's state of mind is generally not available. "As one court stated, 'intent to deceive may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the [creditor.]'" *In re Suarez*, 367 B.R. at 349 (quoting *Hong Kong Deposit and Guar. Co. v. Shaheen* (*In re Shaheen*), 111 B.R. 48, 53 (S.D.N.Y. 1990)).

And here too, the record shows that Mr. Dvorkin's misrepresentation was not made with the intent to "deceive and cheat" Ms. Della Luna. When Mr. Dvorkin and Ms. Della Luna entered into the loan, Mr. Dvorkin was employed and working on a regular basis. Pl. Exh. 12. And soon thereafter, Mr. Dvorkin began to repay the loan, and continued to do so for a period of some months, in at least May, July, and August 2013. January 23 Trial Tr. 6:10-11, 28:12-13, 45:23-25; Def. Exh. A. The June 2013 cash payment is disputed. January 23 Trial Tr. 6:10-11, 28:12-13, 45:22-25.

That is, the record does not support, either directly or by reasonable inference, the conclusion that Mr. Dvorkin intended to deceive Ms. Della Luna. Nor does the record show that he acted in a way that would show "moral turpitude or intentional wrong."

Accordingly, the Court finds that Ms. Della Luna has not established the third element of her claim under Bankruptcy Code Section 523(a)(2)(A), that Mr. Dvorkin made the false representation that he would repay the loan with the intent to deceive Ms. Della Luna.

<u>*Whether Ms. Della Luna Justifiably Relied on Mr. Dvorkin's False Representation*</u>

The fourth element that Ms. Della Luna must establish is whether she justifiably relied on Mr. Dvorkin's false representation. Put another way, Ms. Della Luna must show that it was reasonable for her to rely, and she in fact relied, on Mr. Dvorkin's promise to repay the loan.

Here, it is undisputed by the parties, and the record shows, that Ms. Della Luna relied on Mr. Dvorkin's promise to repay the loan to her. The record similarly shows that Ms. Della Luna's reliance on his promise was justifiable. Ms. Della Luna testified convincingly and credibly that she lent Mr. Dvorkin the money because he promised to repay her. For example, she stated:

> In April – April 8th, 2013, Mr. Dvorkin asked me to lend him money, $5,000, and I said that's a large sum, and that's the only money that I have in my checking account in case of emergency. But he was very persistent and he came with the story that his relative offered him – he need – he's a business – owned business and need large amount soon, like 40,000 cash, and Mr. Dvorkin only had 35,000. And his relative going to pay 5 percent monthly on that money. And I said why don't you lend 35,000. And he said in – like, deal only 40,000 or nothing. And he offered me on the 5,000, 5 percent monthly interest. That probably was – and based on that, I made decision.

January 23 Trial Tr. 5:21-6:7.

The loan documentation received in evidence also lends support to the conclusion that Ms. Della Luna's reliance on that promise was justified. As one example, that evidence includes a handwritten agreement written titled "IOU" documenting the terms of the loan, signed by Mr. Dvorkin with the statement that he would repay the loan, and confirming his identity with a copy of his driver's license. Pl. Exh. 1. It states, "I, Feliks Dvorkin, borrowed $5,000.00 (Five

thousand U.S. $) from Inna Tatarinova, and [guarantee] to return this money any time she needs starting June 15, 2013." *Id.*

And Mr. Dvorkin's testimony concerning entering into the loan is consistent with this. As he testified, "I borrowed $5,000 in 2013. I agree with this." January 23 Trial Tr. 45:21. To the same effect, his pre-trial statement, admitted into evidence as Defendant's Exhibit C, states, "I, Feliks Dvorkin, has borrowed $5,000.00 from Ms. Inna Tatarinova in 2013. According to our agreement, I have started repayments of the loan in amount of $250 a month starting [May 2013]." Def. Exh. C.

Accordingly, the Court finds that Ms. Della Luna has established the fourth element of her claim under Section 523(a)(2)(A), that she justifiably relied on Mr. Dvorkin's false representation that he would repay the loan.

### *Whether Ms. Della Luna Sustained a Loss that Was Proximately Caused by Mr. Dvorkin's False Representation*

The final element that Ms. Della Luna must establish is whether Mr. Dvorkin's false representation that he would repay the loan proximately caused her to sustain a loss. That is, Ms. Della Luna must show that Mr. Dvorkin's promise to repay the loan, which proved to be false, caused her to suffer loss or damage.

Here again, this element is undisputed by the parties, and supported by the record. That is, the record shows that Ms. Della Luna suffered a financial loss as a consequence of Mr. Dvorkin's misrepresentation that he would repay the money that he borrowed from her. As Mr. Dvorkin stated at the beginning of trial, "I admit that I borrow money. I admit that I owe money." January 23 Trial Tr. 44:14-15.

Accordingly, the Court finds that Ms. Della Luna has established the fifth element of her claim under Section 523(a)(2)(A), that she sustained a loss that was proximately caused by Mr. Dvorkin's false representation.

*          *          *

For these reasons, and based on the entire record, the Court finds that Ms. Della Luna has established the first element of her nondischargeability claim under Bankruptcy Code Section 523(a)(2)(A), that Mr. Dvorkin made a false representation; the fourth element of her claim, that she justifiably relied on that false representation; and the fifth element of her claim, that she sustained a loss that was proximately caused by that false representation.

The Court also finds that Ms. Della Luna has not established the second element of her nondischargeability claim, that Mr. Dvorkin knew that his representation was false at the time it was made; or the third element of her claim, that Mr. Dvorkin made the false representation with the intent to deceive her.

**<u>Conclusion</u>**

For the reasons set forth herein, and based on the entire record, the Court finds and concludes that Ms. Della Luna has not established her claim under Bankruptcy Code Section 523(a)(2)(A).

For these same reasons, and based on the entire record, the Court finds and concludes that the Corrected Judgment awarded in the Small Claims Court Action is not excluded from Mr. Dvorkin's bankruptcy discharge.  And also for these reasons, and based on the entire record, all

19

other relief requested in the Complaint is denied.

An order and judgment in accordance with this Memorandum Decision After Trial will be entered simultaneously herewith.



Dated: Brooklyn, New York
February 26, 2020

_____
Elizabeth S. Stong
United States Bankruptcy Judge